**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Eastern  Awning Systems, Inc.; and | : | CASE NO. |
| Stephen Lukos | : | 301CV912 (RNC) |
| *Plaintiffs* | : | |
| | : | |
| Vs. | : | |
| | : | |
| Harold's Canvas and Awning, Inc.; Toff | : | |
| Industries, Inc.; and Harold Toffey | : | |
| *Defendants* | : | NOVEMBER 1, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO RULE 56(C)**

**I.     INTRODUCTION**

This is a patent infringement case.  The Plaintiffs, Eastern Awning

Systems, Inc. (the exclusive licensee) and Stephen Lukos (the patentee)

herein are collectively designated "Eastern".  Defendants Toff Industries,

Inc. (the manufacturer), Harold's Canvas and Awning, Inc. (a name-holding

company only) and Harold Toffey (the owner of Toff and Harold's) herein

are collectively designated "Toffey".  Eastern has sued Toffey for

infringement of patent 5,273,095 ("the '095 patent") in this court.  More

specifically, Eastern alleges infringement of Claim 6 of the '095 patent only.

The infringement charges based on the other claims were dropped by

Plaintiffs early in this action.

The complaint alleges patent infringement and violation of the Connecticut Unfair Trade Practices Act Conn. Gen. Stat. §42-110a. et seq.("CUTPA")  In its answer, Defendants deny infringement and allege that the '095 patent is invalid.  The Defendants, through their Motion for Summary Judgment, seek a declaratory judgment of non-infringement of the '095 patent.

## II.    LAW OF SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56(c) if there are no genuine disputes as to material facts.  Only facts which might affect the outcome of the suit under governing law are material.  A dispute regarding a material fact is only "genuine" if a jury could reasonably return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 447 U.S. 247, 248, 106 S.Ct. 2510, 2511, 91 L.Ed. 2d 202 (1986).

Summary judgment is particularly appropriate in this case because all material facts can be readily ascertained by the documents in the case:

1.  The '095 patent itself. (Plaintiff's Exhibit A to their Complaint);

2.  The file history of the '095 patent. (Defendant's Exhibit A); and

3.  The Affidavit of Harold J. Toffey (Defendant's Exhibit B) including explanation of structure and operation of the accused device.

Given that this case arises from a claim of patent infringement, the court must engage in a two step process. "First, the court construes the claims to correctly determine the scope of the claims. Second, it compares the properly construed claims to the accused device." <u>Lockhead Martin Corp. v. Space Systems/Loral, Inc.</u>, 249 F.3d 1314 (Fed. Cir. 2001); citing <u>Cybor Corp. v. FAS Techs, Inc.</u>, 138 F.3d 1448, 1454, 46 USPQ 2d 169, 1172 (Fed. Cir. 1998) (en banc).

"A determination of infringement, both literal and under the doctrine of equivalents, is a question of fact." <u>Lockhead Martin Corp. v. Space Systems/Loral, Inc.</u>, supra. at 323; citing <u>Insituform Techs, Inc. v. Cat Contracting, Inc.</u>, 161 F.3d 688, 692, 48 USPQ 2d 1610, 1614 (Fed. Cir. 1998).

As is set forth with specificity in the following discussion, the undisputed material facts establish that there is no literal infringement of patent `095 and the doctrine of equivalents can not be applied as a result of the plaintiffs' cancellation of the original, broad, patent claims and substitution of the narrower claims upon which the subject patent was issued.

Therefore, this case is amenable to disposal by summary judgment.

## III.   DISCUSSION

The '095 patent relates to a bracket assembly for the lateral arm for an awning support system. The awning is of the type that extends cantilever fashion out from the house with no vertical supports (posts, etc.) at the outward end. The system comprises bracket mounting means, arm mounting means for the pivotal attachment to the bracket, and means to bias the lateral arm against the downward force of gravity and dynamic forces.

The structure and operation of the assembly of '095 (Plaintiff's Exhibit A from Complaint) may be explained with reference to Fig. 5 of the patent (separate copy attached as Defendant's Exhibit C). In this view, the tube 20 (using the numerals of the patent drawing of '095) is secured to the house. Spaced identical brackets 21a and 21b are clamped onto the tube 20, and bridging plate 24 extends between the brackets. A housing 22, hollowed at 23, is connected to the arm 12 and the proximal end (nearest the house) of the housing 22 is vertically bifurcated and horizontally apertured to receive a pivot barrel 25. The barrel 25 is drilled and threaded, and a bolt 27 extends up through an opening in the plate 24 and is threaded into the threaded drill hole to hold the proximal end of the housing 22 in fixed position.

From the front of the brackets 21a and 21b, a bolt 29 holds a horizontal flange 32 firmly, and the hollow 23 surrounding the flange 32 is filled with polyurethane, a resilient plastic.  (Numeral 23 is designated in the patent as the plastic, but the numeral here is used also for the hollow in which the plastic resides).  The polyurethane serves as a resilient compression member between flange 32 and housing 22 to yieldingly support the canvas-supporting awning arms 12.

Viewed in terms of the physics involved, each awning arm 12 of '095 is a "lever", a lever being defined as "one of the simplest machines which consists of a rigid beam that pivots about a fixed point or fulcrum"[1].  As illustrated in Defendants' Exhibit D, levers are classified as first class (wherein the "fulcrum" is between the "effort" and the "load"), second class (wherein the "load" is between fulcrum and the "effort"), and third class (wherein the "effort" is between "fulcrum" and "load").  Referring again to Exhibit C, the arm 12 of '095 would be what the textbooks call a "third class lever".  The fixed pivot barrel 25 provides a "fulcrum" at the left end of the lever (housing 22 and arm 12).  The resilient plastic compression member

---

[1]  "The Concise Dictionary of Science" by Robin Kerrod; Arco Publishing, Inc., New York, 1985.  Portions comprise Exhibit D, an attached part hereof.

32 in the hollow of the housing which urges the flange 32 upward is the

"effort".  The weight of the awning and arm 12 is the "load".

Turning to the purported '095 invention as claimed in Claim 6 of the

patent we have highlighted the language which is pivotal in making the

infringement determination[2]:

Claim 6:

6.      A bracket assembly for a lateral arm of an
awning support system,
        comprising:

a.      bracket mounting means to mount said
bracket assembly to a surface from which said
awning extends;
b.      arm mounting means for the vertically pivotal
attachment to said bracket mounting means of the
proximal end of said lateral arm;

c.      spring means operatively connected between
said bracket mounting means and said arm
mounting means to normally maintain said lateral
arm in an equilibrium position, extending outwardly
from said surface, but to allow said lateral arm to
rotate vertically from said equilibrium position to
absorb the vertical component of an excessive load
on said awning and/or to permit said awning to
shed the condition producing said excessive load,
and then to permit said lateral arm to return to

---

[2]  The other claims, 2-5 and 7-11, are dependent claims which add limitations
respectively to Claims 1 and 6.  Therefore, the <u>dependent</u> claims are more specific
than the independent claims and are not infringed if the independent claims are not
infringed.  "There is no point in going further to analyze the dependent claims".
<u>Teledyne McCormick Selph v. U.S.</u>, 558 F.2d 1000, 1004.

said equilibrium position when said vertical
component is no longer present;

d.    said arm mounting means comprises a
horizontal pivot barrel disposed through the distal
end of said housing and operatively connected to
said bracket mounting means; and

e.    a threaded vertical pitch adjustment rod
<u>secured against vertical movement with respect to
said bracket mounting means</u>, said pitch
adjustment rod threadingly engaging said
horizontal pivot barrel so as to selectively raise or
lower said horizontal pivot barrel to adjust the
equilibrium position of said lateral arm.  (emphasis
added)

The application which became patent '095 was originally filed on June 9,
1992 with a total of two claims.  A copy of the page 14 of the application
presenting the two claims comprises Defendant's Exhibit E, an attached part
hereof. These claims -- application claims 1 and 2 -- are broader than
patent Claim 6 in the issued patent.  They do not contain the language
underlined in the above presentations of claim 6.  Patent Claim 6 was added
during the prosecution by two amendments dated August 31, 1992 and
March 19, 1993, respectively (Defendants' Exhibit F, an attached part
hereof) after the original application Claims 1 and 2, much broader than
Claim 6, were cancelled.  Patent Claim 6 was application Claim 10.  The
narrowing of the claims presumably was done because the original Claims 1
and 2 were too broad to be allowed and did not comply with 35 USC 103

which requires "unobviousness", or Section 102 which requires that the invention not be anticipated.

It is now appropriate to compare the scope of the application Claim 1 and the patent Claim 6.  As stated, Claims 1 and 2 of the Lukos application are attached hereto as Exhibit E.  Claim 1 broadly in part recites:

> (b)    arm mounting means for the vertically pivotal attachment to said bracket mounting means of the proximal end of said lateral arm; and

because the arm mounting means would include the pivot and the pitch adjustment rod, it is fair to assume that this broad recitation covers the territory which includes the specific points underscored in Claim 6, specifically sub-paragraph e of  Claim 6.

> e.    a threaded vertical pitch adjustment rod <u>secured against vertical movement with respect to said bracket mounting means</u>, said pitch adjustment rod threadingly engaging said horizontal pivot barrel so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm. (emphasis added)

There can be no doubt that a portion of application Claim 1 was narrowed by the amendment to become part of the patent Claim 6.  As a result, the scope of the original Claim 1 was narrowed by amendment.  There is, consequently, a prosecution history estoppel.  Lukos, to get his patent, conceded all the territory between the scope of the application

Claim 1 and the narrower patent Claim 6.  He can not now claim

infringement of the surrendered territory.

As outlined in the Affidavit of Harold J. Toffey (Exhibit B, an attached

part hereof), the structure of the Toffey accused device[3],  is substantially

different from the assembly of '095.  In Toffey (see Defendants' Exhibit G-1

as part of the Toffey Affidavit Exhibit B) the side-by-side brackets 62 are

bridged by a bridge plate 66.  A fulcrum bolt 70 extends between the

brackets 62 and supports the housing 72 at its center.  The awning arm 74

rides between the spaced flanges 74 on the front of the housing 72.  The

rear of the housing 72 has a pair of spaced ears 76 which have openings

which rotatably carry the barrel 78, drilled and threaded between the ears.

Up from a hole in the bridge plate 66 a bolt 82 extends.  The bolt 82 is

encircled by a heavy spring 86 under compression between the plate 66 and

the bolt head 84.  The bolt 82 is threaded into the drilled opening in the

barrel 78.

In the first place, Toffey's "lever" -- the housing 72 and arm 74 -- is a

"first class lever".  The "fulcrum" is the fulcrum bolt 70.  The "effort" is the

coil spring 86 under compression between the head 84 of the bolt 86 and

---

[3] The "accused device" refers to the one attributed to the Defendant.

the bridge plate 66.  The bolt 86 is threaded into the barrel 78 which is connected between spaced wings of the housing 72, urging them downward.  The "load" is the weight of the support arm 74 which carries the awning canvas.  Thus, when the wind blows the awning downward, the housing 72 and arm 74, pivot, see-saw fashion, about the bolt 70, the coil spring 82 yielding momentarily.  When the wind abates, the spring 86 instantly pulls the back of the housing down, popping the awning up to its original position.  (This arrangement gives the Defendant's assembly quicker reflexes than Plaintiff's which returns the arm only as the plastic slowly restores itself to its previous equilibrium.)

The Defendant notes that the underscored language in Plaintiff's Claim 6 above does not find response in the Defendant's bracket assembly.  Put another way, it can be seen that the Claim 6 does not "read on"[4] --is not literally infringed by -- Toffey.  Specifically, referring to Claim 6, Toffey does not have a "vertical pitch adjustment rod secured against vertical movement with respect to said bracket mounting means".  (Instead, Toffey provides the bolt 86 which is vertically movable as the spring yields and the

---

[4] To ascertain if there is patent infringement "it must be determined whether the claim "reads on" the accused product or process, that is, whether the claimed invention is being made, used or sold by the alleged infringer".  <u>Standard Oil Co. v. American Cyanamid Co.</u>, 774 F.2d 448, 452 (Fed. Circuit 1985).

arm mounting means pivots about the forward pin intermediate the ends of

the lateral arm.)

    The absence of the "vertical pitch adjustment rod secured against

vertical movement with respect to said bracket mounting means"  is

acknowledged by Plaintiffs' own experts.  In his deposition Earling Smith,

the Plaintiffs' primary expert, testified:

> Q.      I'll see if I can ask it differently for
> you, Doctor.  Referring to the '095 patent, the
> device therein, isn't it correct that rod 26 is the
> vertical pitch adjustment rod?
>
> A.      Yes.
>
> Q.      And isn't it accurate that the vertical
> pitch adjustment rod in the device is fixed against
> vertical movement at all times?
>
> A.      Yes.
>
> Q.      And the Toff device rod [82] would be
> the vertical pitch adjustment rod, correct?
>
> A.      Yes.
>
> Q.      And rod [82] in the Toff device is not
> fixed against vertical movement at all times,
> correct?
>
> A.      Yes, correct.

*See Exhibit G, Deposition of Earling Smith, Dated November 27, 2002, Page
37 lines 15-25; Page 38 lines 1-4*

_____

Further, plaintiff's additional expert, Edward Keogh testified:

> Q.    But there is no question, is there, that that bolt, 84, 82, which we call in you Declaration the vertical pitch adjustment rod, moves vertically when a load is applied, correct?
>
> A.    When a load is applied, the bolt will move, yes.
>
> Q.    And isn't it true that the vertical pitch adjustment rod in the Lukos patent will not move vertically when a load is applied to the front rail or to the lateral arm?
>
> A.    That is correct.

*See Exhibit H, Deposition of Edward Keogh, dated April 25, 2002, Page 38, lines 9-14; Page 39, lines 11-15*

The fact that differences exist between the devices, particularly that the pitch adjustment rod of the Toffey device is not secured against vertical movement is also emphasized by defendant's expert engineer, John Milon Pratt.

> Q.    No. I'd like you to state what opinions you've formed.  If you need to refer to your report (handing), please do so.
>
> A.    My summary opinion is that the pitch adjustment rod is not secured against vertical movement with respect to said bracket mounting means.,
>
> Q.    What's your understanding of the patent that's been marked for identification as Plaintiff's Exhibit 3?

A.     I don't claim a full understanding of this patent, but it seems to cover a number of different possible configurations.  The configuration that was used to produce the sample of the product I saw from Lukos had a threaded vertical pitch adjustment rod that did not appear to have any load shedding capabilities or characteristics.  At the same time, I would claim greater knowledge of the Toffey device, and I would like to have a sample of the Lukos device here to positively confirm that understanding.

*See Exhibit I, Deposition of John Milon Pratt, dated December 9, 2002, Page 33, lines 1-6; Page 47, lines 1-11*

Interesting it is noteworthy that Mr. Keogh testified in direct contradiction to his original statement on his declaration which was relied on by the Plaintiffs in their original Objection to Defendants' original Motion for Summary Judgment.

It is clear that the very language inserted in the narrower '095 Claim 6 and not present in the original claim 1 is language which does not find response in the Toffey shoulder.  <u>This precludes a finding of literal infringement.</u>

The question arises: can the language of the Claim 6 of '095 -- particularly the underscored language in Claim 6 above -- be expanded to cover Toffey under the doctrine of equivalents.

Briefly, the doctrine of equivalents as set forth in the Supreme Court <u>Graver Tank</u> case[5] (but bottomed on prior case law) was intended to thwart copyists who made insubstantial changes to the structure of an invention. While such changed structure may avoid "reading on" the claims of a patent literally, <u>Graver</u> held that the claims were infringed under the doctrine of equivalents.  In the words of <u>Graver</u>, if the accused device, or element, serves the same <u>function</u> to effect the same <u>result,</u> in the same <u>way</u>, it is, "equivalent" to the device or element of the patent.

While it will be shown here below to be mooted, it cannot be denied that the various elements of the Toffey accused device accomplish their purpose in a <u>different way</u> from the same elements in '095 (1st versus 3rd class lever; coil spring versus resilient plastic) and with a <u>different result</u> (quicker reflex of the coil spring results in quicker return than the slow restoration of the plastic).  However, the question of whether the doctrine of equivalents applies here is not reached.

The most recent Supreme Court authority on the doctrine of equivalents and the rule of prosecution history estoppel is <u>Festo Corp. v. Shoketsu Kinoku Kogyo Kabushiki Co., LTD, et al</u>, 1225. CR. 1831, 535 U.S. 722, 152

---

[5]  <u>Graver Tank & Mfg. Co. v. Linde Air Products Co.</u>, 339 U.S. 605 (1950).

L.E.2d (2002) on certiorari to the Court of Appeals for the Federal Circuit (CAFC).  The CAFC in an <u>en banc </u>decision (234 F.3rd 558 (2000)) had in effect "overruled" the holding of the Supreme Court in <u>Warner-Jenkinson</u> and decided that where the file history of a patent indicates that there had been an amendment to the scope of the claims, narrowing them for any reason, there is an absolute or <u>complete</u> bar to any use of the doctrine of equivalents to expand the literal wording of the amended claims to cover equivalent structures.  The <u>Warner-Jenkinson</u> case had held, consistent with a long line of cases including many CAFC cases, that the bar was <u>flexible</u> and the doctrine of equivalents can be used to expand the meaning of the narrowed description of an element unless the amendment was made for the purpose of avoiding the prior art.  The CAFC "did in" the doctrine of equivalents where the amendment narrowed a claim.  Any amended narrowed claim would be read literally.

    Justice Kennedy, in the <u>Festo</u> decision quotes <u>Wang Laboratories, Inc. v.</u> <u>Mitsubishi Electronics America, Inc.</u>, 103 F.3d 1571, 1577-1578 (CA Fed. 1997)

> "Prosecution history estoppel…preclud[es] a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent". Were it otherwise, the inventor might avoid the PTO's gatekeeping role and seek the recapture in

an infringement action the very subject matter surrendered as a condition of receiving the patent.

The [CAFC] court acknowledged that its own prior case law did not go so far.  Previous decisions had held that prosecution history estoppel constituted a flexible bar, foreclosing some, but not all, claims of equivalence, depending on the purpose of the amendment and the alterations in the text.  The court concluded, however, that its precedents applying the flexible-bar rule should be overruled because the case-by-case approach has proved unworkable.  In the [circuit] court's view a complete-bar rule, under which estoppel bars all claims of equivalence to the narrowed element, would promote certainty in the determination of infringement cases. <u>Festo</u> 535 U.S. 722  (2002), in Section III.

This gratuitous "overruling" of the <u>Warner-Jenkinson</u> case by the CAFC provoked the Supreme Court.  The Supreme Court <u>Festo</u> decision put the law back on track, restating the <u>flexible</u> bar rule approach to the application of the doctrine of equivalents.  Still, where a narrowing amendment is made to the application in the Patent and Trademark Office to avoid or distinguish over the prior art, the patentee is barred from using the doctrine of equivalents.

Justice Kennedy in the <u>Festo</u> decision recognized that the patentee might have an explanation why the bar should not apply.  Quoting <u>Warner-Jenkinson</u>, he stated:

"Where no explanation is established, however, the court should presume that the patent application had a substantial reason related to patentability for including the limiting element added by amendment.  In those circumstances, prosecution history estoppel would bar the application of the doctrine of equivalents as to that element." Id...at 33.

When the patentee is unable to explain the reason for amendment, estoppel not only applies but also "bar[s] the application of the doctrine of equivalents as to that element." *Ibid*.  These words do not mandate a complete bar; they are limited to the circumstance where "no explanation is established."  They do provide, however, that when the court is unable to determine the purpose underlying a narrowing amendment—and hence a rationale for limiting the estoppel to the surrender of particular equivalents—the court should presume that the patentee surrendered all subject matter between the broader and the narrower language.

Just as <u>Warner-Jenkinson</u> held that the patentee bears the burden of proving that an amendment was not made for a reason that would give rise to estoppel, we hold here that the patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question.

The Supreme Court remanded the <u>Festo</u> case to the CAFC to ascertain whether the patentee had reasons for not applying the bar.  The CAFC at 304 F3d 1289, 1290 (2002) ordered the parties to submit briefs on the issues relating to rebutting the presumption referred to above.

With respect to the Lukos prosecution, the two original claims of '095 were cancelled during prosecution and replaced with narrower claims to comply with 35 USC 103. (See Defendants' Exhibit F)  The amendment was filed after the patent examiner rejected claims 1 through 3 and 7 and objected to claims 4 through 6 submitted by amendment to the June 9, 1992 application.  (See Defendants' Exhibit A, File History).

Thus, in the prosecution of the '095 patent, the claims were not amended in response to a rejection as they were in Festo.  Instead, in '095 the original claims were cancelled and replaced with more narrowly specified claims.  The more narrowly specified claims then issued in the '095 patent.  In the recent Mycogen decision[6], the Federal Circuit stated that it did not:

> discern any legally significant difference between canceling a claim having a broad limitation and replacing it with a claim having a narrower limitation, and amending a claim to narrow a limitation.  To do so would place form over substance and would undermine the rules governing prosecution history estoppel laid out in Festo by allowing patent applicants simply to cancel and replace claims for reasons of patentability rather than to amend them".

Accordingly, Festo applies in the present situation.

---

[6] Mycogen Plant Science, Inc. and Agrigentetics, Inc. v. Monsanto Company, (00-1127) Fed. Circuit, May, 2001.

The direct and primary reason for the narrowing amendment, while not explained in the patentee's statements in the amendment paper, may be presumed to be to avoid the prior art. [7] It may be presumed that the Plaintiff's attorney had made some search after filing the application and before the first "action. There was not yet a rejection based on the prior art or "obviousness". The narrowing amendment was made voluntarily. Even so, voluntary amendments invoke the rule of prosecution history estoppel to the same extent as amendments in response to a rejection. (Festo Corp. v. Shoketsu Kinoku Kogyo Kabushiki Co., LTD, Et AL, 234 F2 558, 568).

Thus, the claims of '095, because they do not literally "read on" the Defendant's assembly, are not infringed, and that's the end of it. The application of the doctrine of equivalents is precluded by prosecution history estoppel, using the "flexible" rule under Festo.

## IV.    CUTPA CLAIM

Because the jurisdiction of this Court over the CUTPA allegations hinges on the survival of the patent infringement allegation, alleged CUTPA aspects will not be discussed herein.

---

[7] For instance, the prior art of record in the '095 patent includes the British patent 483,001 (copy attached as Exhibit J) on which Claim 1 above may be read. Note that the Fig. 2 arrangement of 483,001 (with the fulcrum 8 between "effort" 17 and "load" 10) is more like the Defendants' accused devise than the Plaintiff's shoulder.

If judgment is granted in favor of the defendants, said CUTPA claim should be dismissed.

## V. CONCLUSION

Defendant Toffey's Motion for Summary Judgment is fitting under the present circumstances.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact..."  Fed. R. Civ. P. 56(c).

There are sufficient grounds for granting a summary judgment on the basis of the Festo case in that the portions of the later-filed narrower claims not present in the originally filed claims do not "read on" corresponding elements in Toffey.

The Defendant urges that there is adequate basis for summary judgment in this case.  It is also appropriate for the court to declare the patent not infringed.

THE DEFENDANTS, Harold's Canvas and Awning, Inc.;
Toff Industries, Inc.; and Harold Toffey


By: _____

Thomas G. Parisot, for
Secor, Cassidy & McPartland, P.C.
41 Church Street, P.O. Box 2818
Waterbury, Connecticut 06723-2818
Phone No. (203) 757-9261
Fed. Bar No. ct 06319


By: _____

Dallett Hoopes, Esquire
Box 205
Litchfield, Connecticut 06759
Phone No. (860) 567-5455
Fed. Bar No. ct 22710

## **CERTIFICATION**

This is to hereby certify that a copy of the foregoing was mailed on the
above date, postage prepaid, to all counsel and pro se parties of record as
follows:

Charles L. Howard, Esquire
Patrick M. Fahey, Esquire
Shipman & Goodwin, L.L.P.
One Constitution Plaza
Hartford, CT 06103-2819


_____
Thomas G. Parisot