**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Eastern Awning Systems, Inc.; and | : | CASE NO. |
| Stephen Lukos | : | 301CV912 (GLG) |
|     *Plaintiffs* | : | |
| | : | |
| Vs. | : | |
| | : | |
| Harold's Canvas and Awning, Inc.; Toff | : | |
| Industries, Inc.; and Harold Toffey | : | |
|     *Defendants* | : | NOVEMBER 22, 2004 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING CLAIMS CONSTRUCTION**

I.    Description and physics of the operation of patented '095 device

    A.    The '095 patent relates to a bracket assembly for the lateral arm for an awning support system.  The awning is of the type that extends cantilever fashion out from the house with no vertical supports (posts, etc.) at the outward end.  The system comprises bracket mounting means, arm mounting means for the pivotal attachment to the bracket, and means to bias the lateral arm against the downward force of gravity and dynamic forces.

    The structure and operation of the assembly of '095 (Plaintiff's Exhibit A from Complaint) may be explained with reference to Fig. 5 of the patent (separate copy

attached as Defendant's Exhibit C). In this view, the tube 20 (using the numerals of the patent drawing of '095) is secured to the house. Spaced identical brackets 21a and 21b are clamped onto the tube 20, and bridging plate 24 extends between the brackets. A housing 22, hollowed at 23, is connected to the awning arm 12 and the proximal end (nearest the house) of the housing 22 is vertically bifurcated into two spaced vertical ears defining a vertical channel. The ears are horizontally apertured to receive a pivot barrel 25. The barrel 25 is drilled and a threaded pitch adjustment rod 26 having the "nut" or head 27 <u>secured</u> thereon. The assembly 26, 27 can be thought of as a bolt extending up through an opening in the bridging plate 24, which is threaded into the drilled hole in the barrel 25 to hold the proximal end of the housing 22 in fixed position, serving as a fulcrum.

      From the front of the brackets 21a and 21b, a bolt 29 holds a horizontal flange 32 firmly, and the hollow 23 surrounding the flange 32 is filled with polyurethane, a resilient plastic. (Numeral 23 is designated in the patent as the plastic, but the numeral here is used also for the hollow in which the plastic resides). The polyurethane serves as a resilient compression member between flange 32 and housing 22 to yieldingly support the canvas-supporting awning arms 12.

Viewed in terms of the physics involved, each awning arm 12 of '095 is a "lever." As illustrated in Defendants' Exhibit D in its filing of November 2, 2004, levers are classified as first class (wherein the "fulcrum" is between the "effort" and the "load"), second class (wherein the "load" is between fulcrum and the "effort"), and third class (wherein the "effort" is between "fulcrum" and "load"). Referring again to the '095 patent Exhibit C, the arm 12 of '095 would be what the textbooks call a "third class lever". The fixed pivot barrel 25 supports the proximatal end of the housing 22 and provides a "fulcrum" at the left end (as viewed in fig. 5) of the lever (housing 22 and arm 12). The resilient plastic compression member 23 in the hollow of the housing 22 acting against the flange 32 ergs the housing upward and is the "effort". The weight of the awning and arm 12 is the "load".

II.  The claim and language in dispute

    B.  At the center of the claim construction dispute is Claim 6 which reads:

Claim 6:

    6.  A bracket assembly for a lateral arm of an awning support system, comprising:

        a.  bracket mounting means to mount said bracket assembly to a surface from which said awning extends;

  b. arm mounting means for the vertically pivotal attachment to said bracket mounting means of the proximal end of said lateral arm;

  c. spring means operatively connected between said bracket mounting means and said arm mounting means to normally maintain said lateral arm in an equilibrium position, extending outwardly from said surface, but to allow said lateral arm to rotate vertically from said equilibrium position to absorb the vertical component of an excessive load on said awning and/or to permit said awning to shed the condition producing said excessive load, and then to permit said lateral arm to return to said equilibrium position when said vertical component is no longer present;

  d. said arm mounting means comprises a horizontal pivot barrel disposed through the distal end of said housing and operatively connected to said bracket mounting means; and

  e. a threaded vertical pitch adjustment rod <u>secured against vertical movement with respect to said bracket mounting means</u>, said pitch adjustment rod threadingly engaging said horizontal pivot barrel so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm.  (emphasis added)

  The focus of the plaintiffs' Memorandum is the meaning of the word "secure" as in "secured against vertical movement" in subparagraph 6(e).  Referring again to the structure in the patent '095, it is clear that the bolt 26, 27 (Fig. 5) is

threaded and engages the awning pivot barrel 25 by passing through a threaded opening in the barrel 25. The bolt 26, 27 is <u>fixed</u> in position, held from moving upward by the head 27 and held from moving downward by means neither shown nor described. Presumably, some means is provided.

The bolt 26, 27 comprises as the awning pitch adjustment rod 26. As the nut 27 is turned, the barrel 25 moves up or down on the pitch adjustment rod 26. (<u>The rod does not move up or down ever! It is only turned!</u>)

The position of the barrel 25 on the bolt determines the angle or "pitch" of the awning. In practice, the awning installer assembles the awning and then turns the rod 26 by nut 27 to set the pitch. He does this only once, when he installs the awning as at the beginning of the season. The rest of the time the rod 26 serves only to support the fulcrum barrel 25.

The plastic 23, surrounding fixed flange 32 acts as a buffer, helping to absorb shocks when a wind blast or driving rain hits the awning canvas.

With the above understanding of how the '095 patent awning "shoulder," as it is called, works, attention is directed to the word "secured" in sub-paragraph 6(e). It is axiomatic in claim interpretation that "unless the contrary appears, a word has its ordinary meaning" Section 28 <u>Patent Claims</u> by Ridsdale Ellis (Baker Voorhis and Co., Inc.) 1949.

" The Random House Dictionary of the English Language" lists "fixed" as a synonym for "secured" see attached Exhibit A made a part hereof.  This is an ordinary meaning frequently used in patent specifications (this "fixed" synonym aligns with its use of the word "fixed" in the depositions of Dr. Smith and Mr. Keogh).  "It is the "ordinary" meaning of "secured" in describing mechanical structures.

The plaintiffs' use of the meanings "guard" and "make safe" as preferred interpretations for "secured" in subparagraph 6(e) seems to the defendants to be far-fetched and contrived.  Clearly, plaintiff has his purpose in selecting such a meaning: to make the phrase broader as to try to cover instances in which the pitch adjustment has some vertical movement.  But this meaning is contrary to the description in the '095 patent wherein the bolt 26, 27 is held firmly enough to support the barrel 25 so that the barrel is the fulcrum for the entire heavy awning.

Defendants thus interpret "secured against vertical movement" as meaning "<u>fixed</u> against vertical movement."

Defendants take a strong exception to the statement on (Page 8) of plaintiffs' Memorandum that:

> In this case it is readily apparent from the face of the claim language, and indeed it is undisputed, that the sole purpose of element 6(e) is to describe the pitch

>adjustment operation of the invention set forth in the '095 patent.

In the first place the claim does not say that the "sole purpose" of element 6(e) is to describe the pitch adjustment operation. Subparagraph 6(e) presents the rod and states that it engages the barrel and gratuitously notes in a kind of "whereby" clause that the position of the awning can be changed by the adjustment rod, but does not mention the <u>primary</u> use of the rod: to firmly support the barrel 25 which serves as the fulcrum for the entire awning assembly. Such failure to mention this use is of no consequence: the structure is recited.

The attention that the plaintiffs give to the phrase "so as to selectively raise or lower" is apparently an attempt to take a position that the rod is secured against vertical movement only when the "equilibrium position " is being changed and that the claim does not call for the adjustment rod to be secured against vertical movement at other times. As stated above, the rod also supports the barrel, fulcrum of the awning assembly at all times. The "secured against vertical movement" applies at all times. The plaintiffs' perceived position is without merit.

III.   <u>Conclusion</u>

The phase "secured against vertical movement" as used in sub-paragraph 6(e) of Claim 6 means "<u>fixed</u> against vertical movement." This interpretation is

consistent with the operation of the '095 shoulder as described wherein rod 26 and bolt head 27 never move vertically (whether in the pitch adjustment mode or in daily usage) and with the ordinary meaning of "secured." Defendants respectfully urge the Court to construe the meaning accordingly.

       THE DEFENDANTS, Harold's Canvas and Awning, Inc.;
       Toff Industries, Inc.; and Harold Toffey


By: _____
    Thomas G. Parisot, for
    Secor, Cassidy & McPartland, P.C.
    41 Church Street, P.O. Box 2818
    Waterbury, Connecticut 06723-2818
    Phone No. (203) 757-9261
    Fed. Bar No. ct 06319


By: _____
    Dallett Hoopes, Esquire
    Box 205
    Litchfield, Connecticut 06759
    Phone No. (860) 567-5455
    Fed. Bar No. ct 22710

## **CERTIFICATION**

This is to hereby certify that a copy of the foregoing was mailed on the above date, postage prepaid, to all counsel and pro se parties of record as follows:

Charles L. Howard, Esquire
Patrick M. Fahey, Esquire
Shipman & Goodwin, L.L.P.
One Constitution Plaza
Hartford, CT 06103-2819

_____
Thomas G. Parisot