UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EASTERN AWNING SYSTEMS, INC., and STEPHEN LUKOS, | : : : | CIVIL ACTION NO. 3:01cv912 (RNC) |
| Plaintiffs, | : : | |
| v. | : : | |
| HAROLD'S CANVAS AND AWNINGS, INC., TOFF INDUSTRIES, INC. and HAROLD TOFFEY, | : : : : | |
| Defendants. | : | JULY 21, 2005 |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE NOTICE OF SUBSEQUENT AUTHORITY

The plaintiffs, Eastern Awning Systems, Inc., and Stephen Lukos, hereby respectfully submit this Motion for Leave to File Notice of Subsequent Authority in the above-captioned matter. The purpose of this supplemental pleading is to bring to the attention of the Court the en banc decision of the United States Court of Appeals for the Federal Circuit in the matter of Phillips v. AWH Corp., Nos. 03-1269 & 1286, 2005 U.S. App. LEXIS 13954 (Fed. Cir. July 12, 2005). The Federal Circuit's opinion, a copy of which is attached hereto at Tab A, concerns the claim construction issues currently before this Court by virtue of the Court's August 5, 2004 Order directing the parties to submit simultaneous briefs on the construction of element 6(e) of United States Patent Number 5,273,095 (the "'095 Patent") (see filing # 67) and the Plaintiffs' Memorandum of Law Regarding Claim Construction (filing # 69), defendants' claim construction brief filed November 5, 2004 (filing # 73), Plaintiffs' Memorandum of Law in Response to Defendants' Claims Construction Brief (filing # 77) and

Defendants' Response to Plaintiffs' Memorandum of Law Regarding Claims Construction (filing # 78).

## I.    BACKGROUND

As set forth in Plaintiffs' Memorandum of Law Regarding Claim Construction ("Opening Mem."), the invention disclosed in the '095 Patent relates to a bracket assembly for the lateral arm of an awning system that enables the arm to rotate vertically from its equilibrium position in order to absorb and shed an excessive load on the awning (from, for example, the pressure of wind or rain) and then return to its equilibrium position, thus avoiding serious damage to the awning and/or the attached structure. (See, e.g., Opening Mem., Ex. A, at col. 1, ll. 13-43). The patent also discloses a pitch adjustment feature of the bracket assembly, which enables the selection and adjustment of the pitch, or angle, of the awning in its equilibrium (or non-load-shedding) position. (See, e.g., Opening Mem., Ex. A, at Claim 6 (col. 5, ll. 59-60; col. 6 ll. 1-29)).

The asserted claim in which the disputed claim term is present[1] reads as follows:

### Claim 6

A bracket assembly for a lateral arm of an awning support system, comprising:

(a)   bracket mounting means to mount said bracket assembly to a surface from which said awning extends;

(b)   arm mounting means for the vertically pivotal attachment to said bracket mounting means of the proximal end of said lateral arm;

(c)   spring means operatively connected between said bracket mounting means and said arm mounting means to normally maintain said lateral

---

[1]   Claim 7 of the '095 Patent also has been asserted in this case, but that claim does not separately contain disputed claim language. Rather, Claim 7 depends from Claim 6, and therefore contains all of the elements of Claim 6 (including the element (6(e)) that contains the disputed claim language).

2

    arm in an equilibrium position, extending outwardly from said surface, but to allow said lateral arm to rotate vertically from said equilibrium position to absorb the vertical component of an excessive load on said awning and/or to permit said awning to shed the condition producing said excessive load, and then to permit said lateral arm to return to said equilibrium position when said vertical component is no longer present;

 (d) said arm mounting means comprises a horizontal pivot barrel disposed through the distal end of [a²] housing and operatively connected to said bracket mounting means; and

 (e) a threaded vertical pitch adjustment rod **secured against vertical movement** with respect to said bracket mounting means, said pitch adjustment rod threadingly engaging said horizontal pivot barrel so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm.

(Opening Mem., Ex. A, col. 5, l. 59 – col. 6, l. 29) (emphasis added). As recognized by the parties' various filings in response to the Court's August 5, 2004 Order, the sole language in dispute in this case is the phrase "secured against vertical movement" appearing in element (e) of Claim 6 of the '095 Patent.

## II. DISCUSSION OF SUBSEQUENT AUTHORITY

  In <u>Phillips</u>, the <u>en banc</u> Federal Circuit re-affirmed the "'bedrock principle' of patent law" that the claim of a patent alone defines the scope of the invention. <u>Phillips</u>, Nos. 03-1269 & 1286, 2005 U.S. App. LEXIS 13954, at *20. The Federal Circuit has long held "the words of a claim 'are generally given their ordinary and customary meaning.'" <u>Phillips</u>, 2005 U.S. App. LEXIS 13954 at *22 (quoting <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The "ordinary and customary meaning of a claim term," moreover, "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent

---

[2] <u>See</u> Opening Mem., Ex. A, at Certificate of Correction.

3

applications." Id. at *22. Not surprisingly, the Federal Circuit has stressed that the primary tool in understanding this meaning is the actual language employed in the context of the patent itself. See id. at *25. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood terms." Id. at *25-26. Consistent with precedent, the Federal Circuit has continued to hold that, "[i]n such circumstances, general purpose dictionaries may be helpful." Phillips, 2005 U.S. App. LEXIS 13954, at *26.

As detailed in the plaintiffs' prior submissions, construing the meaning of the claim language at issue in this case involves "little more than the application of the widely accepted meaning of commonly understood terms." Specifically, when "used with *from* or *against*," the ordinary meaning of the word "secure," as confirmed by a 1993 general purpose dictionary, is to "guard" or to "make safe." Webster's Third New International Dictionary 2053 (1993) (emphasis in original) (attached as Ex. D to Pls.' Opening Mem.).[3] Moreover, the Federal Circuit confirmed in Phillips the importance of reading claim language in context. See 2005 U.S. App. LEXIS 13954, at *27 ("the context in which a term is used in the asserted claim can be highly instructive"). In this case, reading the claim language in context, it is not possible to separate the language employed in element (e) of Claim 6 from the pitch-adjustment function of that element. (See Opening Mem. at 8-9). Moreover, one cannot simply ignore (as defendants have) the language accompanying "secured against

---

[3]     The Phillips Court held expressly that "we do not intend to preclude the appropriate use of dictionaries. Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used both by our

4

vertical movement" within the claim, i.e., "with respect to said bracket mounting means" and "so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm," each of which phrases clearly informs the meaning of "secured against" in the context of Claim 6. (See Opening Mem. at 8-9, 12, Pls.' Reply Br. (filing # 77), at 10-11).

Noting that the claims of a patent do not stand alone, the Federal Circuit also observed in Phillips that the remainder of the specification of a patent continues to play an important role in claims construction. See 2005 U.S. App. LEXIS 13954, at *28 -*35. In this case, nothing within the specification of the '095 Patent informs a meaning of the phrase "secured against" other than the ordinary and common meaning of the phrase as employed in Claim 6, and the defendants have failed to come forward with even the semblance of an interpretation to the contrary. Rather, as their sole means of claims construction in this case, the defendants have chosen to look exclusively at a single embodiment of the invention claimed in the '095 Patent as somehow supplanting the language actually employed in the claims of the patent. See Defs.' Br. (filing # 73) at 4 ("The structure and operation of the assembly of '095 ... may be explained with reference to Fig. 5 of the [specification]."); (Defs.' Response Br. (filing # 78) at p. 1 (same). In addition to creating a peculiar scenario in which one engages in claims construction without ever having to read the actual language of the patent claim at issue (see Pls.' Reply Br. (filing # 77) at 7-9), the defendants' methodology continues to be soundly denounced by the Federal Circuit, which affirmed in Phillips that it remains a "cardinal sin" of patent law to read a limitation from the written

---

court and the Supreme Court in claim interpretation." 2005 U.S. App. LEXIS 13954, at *28.

5

description into a claim. Phillips, 2005 U.S. App. LEXIS 13954, at *44.

In any event, the defendant's view of Figure 5 of the specification does not withstand analysis. In its discussion of the embodiment of the invention depicted in Figure 5, the specification of the '095 Patent does not inform a reading of element 6(e) even consistent with the defendants' position. (See Defs.' Response Br. at p. 6). Rather, in discussing the embodiment depicted in Figure 5, the specification recites:

> A threaded vertical pitch adjusting rod 26 extends through a channel 28 defined in the proximal end of housing 22 and threadingly engages pivot barrel 25. The vertical position of pivot barrel on adjusting rod 26 is set by rotating the adjusting rod by means of a nut 27 fixed to the lower end thereof and bearing against a plate 24 which extends between recesses defined in the lower edges of the shoulder brackets 21a and 21b. As pivot barrel is raised on adjusting rod 26, lateral arm 12 will pivot downwardly about bolt 29. Likewise, lowering barrel 25 on adjusting rod 26 upwardly pivots lateral arm 12 about bolt 29. Such adjustment sets the equilibrium position of lateral arm 12.

(Opening Mem., Ex. A, at col. 3, ll. 42-54). One searches this language in vain for any support for the defendants' proffered interpretation. (See Defs.' Response Br. at 5 ("The rod does not move up or down ever! It is only turned!")).

A person of ordinary skill in the art would recognize what is plain from the discussion of this embodiment as relates to the disputed claim language: in order to effect pitch adjustment through the means described in the embodiment (i.e., by "rotating" the pitch adjusting rod by means of turning a nut so as to raise or lower the pivot barrel (which the pitch adjusting rod "threadingly" engages, or is screwed into and through)), the pitch adjusting rod must be kept from moving vertically during the process (or "secured against vertical movement"). Otherwise, rotating the nut would not cause the pivot barrel to be raised or lowered, respectively, with respect to the bracket mounting means (i.e., to ride the

6

pitch adjusting rod up and down, thus altering the pitch at equilibrium) but would merely screw the pitch adjustment rod further into or further out of the pivot barrel (i.e., to move vertically with respect to the bracket mounting means, thus not altering the pitch at equilibrium). Thus, to the extent <u>Phillips</u> suggests a re-vitalized emphasis on the specification in assessing the meaning of claim terms, <u>see</u> 2005 U.S. App. LEXIS 13954, at *25 - *35, there is nothing within the specification of the '095 Patent—including Figure 5—that remotely suggests a meaning of "secured against vertical movement" as other than the ordinary and common understanding of this phrase.

### III. CONCLUSION

The defendants' filings do not present this Court with any reasoned analysis focusing on the proper construction of element 6(e) of the '095 Patent. Accordingly, for the reasons set forth in the Opening Memorandum, as well as those set forth herein and in the Plaintiffs' Reply Brief, and under the analysis set forth by the Federal Circuit in <u>Phillips</u>, plaintiffs respectfully request that the Court construe the word "secured" within the context of "secured against vertical movement" in element 6(e) of the '095 Patent to mean "guarded" or "made safe" against vertical movement when adjusting the pitch of the awning (i.e., within the meaning of element 6(e)), so as to enable one using the invention disclosed in Claim 6 "to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm," as dictated in element (e) of Claim 6.

PLAINTIFFS,
EASTERN AWNING SYSTEMS, INC., and
STEPHEN LUKOS,

By /s/ PM Fahey
Charles L. Howard (ct05366)
Patrick M. Fahey (ct13862)
Lee A. Duval (ct23387)
For Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Telephone: (860) 251-5000
Facsimile: (860) 251-5219
E-mail: pfahey@goodwin.com
Their Attorneys

## CERTIFICATION OF SERVICE

This is to certify that on this 21st day of July, 2005, a copy of the foregoing was mailed, via U.S. mail, postage prepaid, to:

Thomas G. Parisot, Esq.
Secor, Cassidy & McPartland, P.C.
41 Church Street
P.O. Box 2818
Waterbury, CT 06723-2818

Dallett Hoopes, Esq.
Box 205
Litchfield, CT 06759

*Patrick M. Fahey* (signature)
Patrick M. Fahey

408036 v.01