UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EASTERN AWNING SYSTEMS, INC., | : | CIVIL ACTION NO. |
| and STEPHEN LUKOS, | : | |
| | : | 3:01cv912 (RNC) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HAROLD'S CANVAS AND AWNING, INC., | : | |
| TOFF INDUSTRIES, INC. and HAROLD | : | |
| TOFFEY, | : | |
| | : | |
| Defendants. | : | AUGUST 7, 2006 |

PLAINTIFFS' SUPPLEMENTAL BRIEF ON CLAIMS CONSTRUCTION

Pursuant to the Court's July 19 Order, the plaintiffs respectfully submit this

Supplemental Brief on Claims Construction.


I.    INTRODUCTION.

In their November 22, 2004 Response Brief (doc. 78), the defendants proposed a

construction of the phrase "secured against vertical movement" as employed in element 6(e) of

the '095 Patent. The proposed construction is that "secured against" means permanently

"fixed" in such a way that the adjustment rod that is a feature of the invention claimed may

never move vertically.

In its July 19 Order, the Court tentatively adopted the defendants' construction and

invited further briefing on the issue. The defendants' proffered interpretation is based on a

faulty analysis of the '095 Patent and runs directly counter to several established principles of

claim construction. Specifically, the defendants' construction improperly (1) limits the

language of element 6(e) based on a single drawing; (2) relies on an attribute of the accused device as informing the claim construction process despite the fact that that attribute is not a limitation of claim 6; (3) conflates issues of claim construction with those of validity; and (4) adds a temporal limitation to element 6(e). In contrast, plaintiffs' proposed construction is supported by both the language of the patent and applicable legal authority. As such, the Court should reject defendants' construction and find that "secured against vertical movement" does not require the adjustment rod to be permanently fixed from moving vertically.

## II.    THE TENTATIVE CONSTRUCTION IMPROPERLY LIMITS THE CLAIM LANGUAGE BASED ON A SINGLE DRAWING.

As made plain in the defendants' brief, their construction is based not on a construction of the language actually employed in the claim or on any interpretation of the phrase "secured against" by one skilled in the art, but on counsel's speculative analysis of one embodiment of the invention depicted in Figure 5 of the '095 Patent. See Defs.' Nov. 22 Brief at 1 ("The structure and operation of the assembly of '095 Patent ... may be explained with reference to Fig. 5 of the patent ...."); id. at 4-5 ("Referring again to the structure in the patent '095, it is clear that the bolt 26, 27 (Fig. 5) is threaded and engages the awning pivot barrel 25 ....").

The law is abundantly clear, however, that the entirety of the invention claimed in the '095 Patent cannot be "explained" by a single drawing of a preferred embodiment, or even by a written description of that embodiment. The Federal Circuit has repeatedly warned against confining the claims to embodiments described in the specification. See, e.g., SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1286 (Fed. Cir. 2005) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations.")

(internal quotation marks omitted); Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1374 (Fed. Cir. 2005) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.") (internal quotation marks omitted); Nazomi Communications, Inc. v. ARM Holdings, PLC, 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"); see also SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  In the recent Phillips case, the court confirmed that such a practice remains a "cardinal sin" of patent law.  Phillips v. AWH Corp., 415 F.3d 1303, 1320, 1323 (Fed. Cir. 2005) (en banc).  This rule holds true even in situations where the specification describes only a single embodiment.  See, e.g., Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d 1352, 1357 (Fed. Cir. 2004) ("the applicant's choice to describe only a single embodiment does not mean that the patent clearly and unambiguously disavowed other embodiments"); see also JVW Enterp., Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005); Gemstar-TV Guide v. Int'l Trade Comm'n, 383 F.3d 1352, 1366 (Fed. Cir. 2004).

The fundamental basis for this rule is that "[t]he law 'does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention.'"  SuperGuide Corp. v. DirecTV Enterprises, Inc., 358 F.3d 870, 880 (Fed Cir. 2004) (quoting SRI Int'l, 775 F.2d at 1121); see also Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1344 (Fed. Cir. 2001).  As the Federal Circuit has explained:

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims.  Nor could an applicant, regardless of the prior art, claim more broadly

> than that embodiment. Nor would a basis remain for the statutory necessity that an applicant conclude his specification with "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

SRI Int'l, 775 F.2d at 1121 (quoting 35 U.S.C. § 112) (en banc).[1]

In order "[t]o avoid importing limitations from the specification into the claims," the Federal Circuit has counseled that "it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." Phillips, 415 F.3d at 1323 (citation omitted). In that regard, the court has held that "[s]tatements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 864 (Fed. Cir. 2004) (emphasis added). In this case, Figure 5 of the '095 Patent undeniably relates only to a preferred embodiment of the invention. Thus, "statements" attributed by the defendants to Figure 5 cannot be said to "describe the invention as a whole," and provide no basis for limiting the claim language.

Moreover, the Federal Circuit has cautioned that the "[c]laims of a patent may only be limited to a preferred embodiment by the express declaration of the patentee." Playtex Prods.,

---

[1] It is precisely for these reasons that the Court's search for the easiest and most rudimentary way of practicing the '095 Patent has no place in proper claim construction. See Transcript of July 19, 2006 Hearing at 30-31. The Court's concern in this regard appears to have been based on a misconception of the law of enablement, but, as discussed more fully in Section III.B, issues going to the validity of the patent have no bearing on the construction issues before the Court in this case. In any event, the Federal Circuit has explained that "[t]he patent's preferred embodiment is just that – one way of using the invention. That disclosure alone does not clearly and unambiguously disavow other ways of [using the invention] within the scope of the claim language." Home Diagnostics, 381 F.3d at 1357.

Inc. v. Proctor & Gamble Co., 400 F.3d 901, 908 (Fed. Cir. 2005). In this case, there is absolutely no evidence of such intent. Quite to the contrary, the specification expressly states:

> It will thus be seen that the objects set forth above, among those elucidated in, or made apparent from, the preceding description, are efficiently attained and, since certain changes may be made in the above construction without departing from the scope of the invention, it is intended that all matter contained in the above description or shown on the accompanying drawing figures shall be interpreted as illustrative only and not in a limiting sense.

'095 Patent, col. 4, ll. 55-63. In light of such a disclaimer, the Federal Circuit has observed that drawings contained within a specification "are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves." Gart v. Logitech, Inc., 254 F.3d 1334, 1342 (Fed. Cir. 2001); see also Varco, L.P. v. Pason Sys. USA Corp., 436 F.3d 1368, 1375 (Fed. Cir. 2006).[2]

Contrary to this clearly established law, the defendants construct virtually their entire argument around a single drawing from the specification and conclude that the adjustment rod of Claim 6 must be permanently "fixed" against vertical movement at all times and in all states. See Defs.' Nov. 22 Brief at pp. 6-8. However, pursuant to clear precedent, Figure 5 of the '095 Patent provides no support for restricting the words used in element 6(e) of the '095 Patent.

---

[2] With regard to the drawings in particular, the specification emphasizes that the drawings were "submitted for purposes of illustration only and not intended to define the scope of the invention." (Col. 2, ll. 8-10).

## III.    THE PROPOSED CONSTRUCTION AND ENABLEMENT ARGUMENTS IGNORE PROPER CLAIM CONSTRUCTION METHODOLOGY.

### A.    Defendants' Reliance on Alleged Features of the Accused Device is Inappropriate.

The defendants have succeeded in effectively bypassing any reasoned attempt to construe the claims in this case by asserting that movement of the pitch adjustment rod on the accused device should inform what "secured against vertical movement" means in asserted Claims 6 and 7.  See Defs.' Nov. 1 Brief at 10-13.

While "knowledge of [the accused] product or process provides meaningful context for the first step of the infringement analysis, claim construction," "a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process."  Wilson Sporting Goods Co. v. Hillerick & Bradsby Co., 442 F.3d 1322, 1326-27 (Fed. Cir. 2006).

By stressing the movement of the adjustment rod of the accused device in its load-shedding state as dispositive of the claims construction issue before the Court, the defendants have impermissibly imported characteristics of the accused device into the construction of the '095 Patent.  "It is well settled that claims may not be construed by reference to the accused device."  Neomagic Corp. v. Trident Microsystems, Inc., 287 F.3d 1062, 1074 (Fed. Cir. 2002).  "A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device....  [C]laims are not construed 'to cover' or 'not to cover' the accused device.  That procedure would make infringement a matter of judicial whim.  It is only after the claims have been construed without

6

reference to the accused device that the claims, as so construed, are applied to the accused

device to determine infringement." SRI Int'l, 775 F.2d at 1118.

The effect of the defendants' focus on the accused device has prejudiced the plaintiffs.

By pointing to the alleged feature of the accused device—an adjustment rod that moves

vertically when not engaged in its admitted adjustment function—the defendants effectively

have diverted attention from any reasoned interpretation of the claim language and changed the

focus to whether or not the inventor envisioned an adjustment rod that moves other than at

equilibrium. See Wilson Sporting Goods Co., 442 F.3d at 1331 ("court may not use the

accused product ... as a form of extrinsic evidence to supply limitations for patent claim

language"). Thus, a patentee that has had imposed upon her an additional limitation on the

claim language is placed in the unenviable position of having to find support in the

specification, the prosecution history or the testimony of the patentee for a feature that is not a

limitation of the invention.[3]

_____

[3] At the July 19 hearing, the Court inquired whether the inventor contemplated an adjustment
rod that was movable relative to the bracket mounting means. Transcript of July 19, 2006
Hearing at 34. As discussed below in Section IV.A, the plaintiffs submit that the language of
Claim 6 read in conjunction with Figures 1-3 of the '095 Patent establish support for the
proposition that the inventor necessarily envisioned an adjustment rod with movement in the
load-shedding state of the awning arm. However, to the extent the Court bases its construction
of the '095 Patent on the absence of inventor testimony, the plaintiffs respectfully submit this
would be error. The Federal Circuit has held that "[t]he testimony of an inventor and his
attorney concerning claim construction is ... entitled to little or no consideration" in claim
construction. Bell & Howell Document Management Prods. Co. v. Altek Sys, 132 F.3d 701,
706 (Fed. Cir. 1997); see also Markman v. Westview Instruments, Inc., 53 F.3d 967, 985
(Fed. Cir. 1995) (en banc) ("No inquiry as to the subjective intent of the applicant or PTO is
appropriate or even possible in the context of a patent infringement suit. The subjective intent
of the inventor when he used a particular term is of little or no probative weight in determining
the scope of a claim (except as documented in the prosecution history)."), aff'd, 517 U.S. 370
(1996).

7

The Federal Circuit, however, has "never required that a claim read on the entirety of an accused device in order to infringe. If a claim reads merely on a part of an accused device, that is enough for infringement." Suntiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1336 (Fed. Cir. 1999); see also Northern Telecom., Inc. v. Datapoint Corp., 908 F.2d 931, 945 (Fed. Cir. 1990) (infringement is not avoided "if a claimed feature performs not only as shown in the patent, but also performs an additional function").

> It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write. Neither would infringement be negated simply because the patentee failed to contemplate use of the pencil in that environment.

Stiftung v. Renishaw PLC, 945 F.2d 1173, 1178 (Fed. Cir. 1991) (internal quotation marks omitted). Indeed, in Stiftung, the Federal Circuit noted that the fact that a claim required an element to effect a result upon an event (there, the production of a signal by a kinematic mount) did not claim, and therefore limit, how the signal was used. "What is done with the signal thereafter is simply not limited in any way by claim language." Id. at 1178. Similarly in this case, what is done by the adjustment rod when it is not engaged in pitch adjustment is not limited by the claim language.[4]

---

[4] It is disingenuous and highly misleading for the defendants to support their interpretation that the adjustment rod is secured against vertical movement at all times by reference to the '095 Patent's alleged "primary use of the rod: to firmly support the barrel 25 which serves as the fulcrum for the entire awning assembly." Defs.' Nov. 22 Brief at p. 7. This feature is not claimed in Claim 6 of the patent, but one need only glance at the accused device (Exhibit G-1 to the Affidavit of Harold J. Toffey submitted as Exhibit B to the defendants' Motion for Summary Judgment (doc. 70)) to understand that the adjustment rod there  (identified as numbers 82 and 84 on the photograph of the accused device) serves the same "primary use," i.e. "to firmly support the barrel" (number 80) which is disposed in the arm housing (number 76).

8

Thus, the alleged introduction into the accused device of a feature not expressly present in the patent claim—in this case, namely, the alleged movement of the adjustment rod in the load-shedding state of the accused device—does not detract from the fact that the accused device meets the limitations set forth in the Patent. To put the argument in the context of the parties' dispute, even an adjustment rod that is moveable vertically can be "secured against vertical movement with respect to said bracket mounting means ... so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm" (Claim 6(e)) because the claim language simply does not otherwise limit the vertical movement of the adjustment rod.

That the claim language does not restrict the movement of the adjustment rod outside of its pitch adjustment function is further supported by the use the introductory signal "comprising" in the asserted claims. The invention disclosed in Claim 6 is one comprised of a number of elements—bracket mounting means, arm mounting means, spring means, and so on. In patent construction, the "signal 'comprising' ... is generally understood to signify that the claims do not exclude the presence in the accused apparatus ... of factors in addition to those explicitly recited." Vivid Techs., Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 811 (Fed. Cir. 1999) (citing Stiftung, 945 F.2d at 1178). "The signal 'comprising' implements the general rule that absent some special circumstance or estoppel which excludes the additional factor, infringement is not avoided by the presence of elements or steps in addition to those specifically recited in the claim." Vivid Techs., 200 F.3d at 811. Thus, the alleged fact that the adjustment rod in the accused device may also serve as a tension rod in conjunction with the load-shedding operation of the spring means of the accused device does

not somehow render the accused device non-infringing. When the accused device is at equilibrium, the adjustment rod in the accused device is secured against vertical movement in exactly the manner specified in Claim 6(e): i.e. it "threadingly engage[es] [the] horizontal pivot barrel so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm." (Claim 6(e)).

**B.    The Defendants' Reliance on 35 U.S.C. § 112 is Inappropriate.**

At argument, defendants conceded that the word "secured" has "many ordinary meanings" but suggested that the Court's construction of the term should be informed by the enablement requirement of 35 U.S.C. § 112. See Transcript of July 19, 2006 Hearing at 18-19. The introduction of this issue by the defendants at argument appeared to strongly influence the Court's approach to its claim construction. However, not only did this argument misstate the applicable law, but the issue of enablement, which concerns the validity of a patent, is not properly before this Court in this case.[5]

---

[5] The invocation of 35 U.S.C. § 112 and any discussion of enablement is absent from any of the defendants' briefs on claims construction or summary judgment in this matter. The plaintiffs have propounded interrogatories and production requests addressed to this very issue. See Mem. of Law in Supp. of Mot. to Compel at Ex. B (interrogatory # 9 to Toff Industries, Inc.), Ex. C (production request # 16 to Toff Industries, Inc.), Ex. D (interrogatory # 8 to Harold's Canvas and Awning, Inc.) and Ex. E (production request # 16 to Harold's Canvas and Awning, Inc.). Despite significant motion practice and several orders from this Court directing compliance with the plaintiffs' discovery requests (see, e.g., docs. 25, 45, endorsement on doc. 46), the defendants have produced no such evidence. (The defendants' responses to these discovery requests are attached as exhibits B through D, respectively, to the plaintiffs' Reply Brief (doc. 23)). Moreover, at the defendants' deposition Mr. Toffey could not provide any support for any invalidity claim. (See Deposition of H. Toffey, excerpts attached as Exhibit A, at 140-41). Under these circumstances, it would be the height of unfairness to allow the defendants to pursue any invalidity claim in this case.

The enablement requirement of 35 U.S.C. § 112 provides in pertinent part that the specification shall describe "the manner and process of making and using [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use [the invention]." 35 U.S.C. § 112. The enablement portion of the statute is addressed to the specification (not to a construction of the claims), and the law is clear that the enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation. See In re Wands, 858 F.2d 731, 737 Fed. Cir. 1988) ("The term 'undue experimentation' does not appear in the statute, but it is well established that enablement requires that the specification teach those in the art to make and use the invention without undue experimentation."); see also Koito Mfg. Ltd. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1155 (Fed. Cir. 2004) (statute requires specification to enable "those skilled in the art to make and use the full scope of the claimed invention without 'undue experimentation'") (citation omitted); Amgen, Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1334 (Fed. Cir. 2003) (enablement requires that the specification "teach[] those in the art enough that they can make and use the invention without "'undue experimentation'").

At argument, the defendants failed to bring to the Court's attention this rather important qualification to the language of § 112. In any event, and even if this issue were properly before the Court,

> Enablement does not require the inventor to foresee every means of implementing an invention at pains of losing his patent franchise. Were it otherwise, claimed inventions would not include improved modes of practicing those inventions. Such narrow patent rights would rapidly become worthless as new modes of practicing the invention developed, and the inventor would lose the benefit of the patent bargain.

Invitrogen Corp. v. Clontech Labs., Inc., 429 F.3d 1052, 1071 (Fed. Cir. 2005).

Accordingly, all that is required is that the written "description enable[] any mode of making and using the invention." Id.

A patent is presumed valid, 35 U.S.C. § 282, and this presumption may be overcome only by clear and convincing evidence. See, e.g., Perricone v. Medicis Pharmaceutical Corp., 432 F.3d 1368, 1372 (Fed. Cir. 2005); see also Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc., 134 F.3d 1085, 1088 (Fed. Cir. 1998) (presumption of validity "exists at every stage of the litigation"). In this case, there has been absolutely no evidence offered by the defendants that the '095 Patent is not enabled; i.e. that "that which is disclosed in the specification plus the scope of what would be known to one of ordinary skill in the art without undue experimentation" would not enable one skilled in the relevant art to fashion an adjustment rod as claimed in Claim 6 of the Patent. Nat'l Recovery Techs. v. Magnetic Separation Sys., Inc., 166 F.3d 1190, 1196 (Fed. Cir. 1999) (emphasis added).

## IV.    THE SPECIFICATION OF THE '095 PATENT SUPPORTS THE PLAINTIFFS' PROPOSED CONSTRUCTION OF "SECURED AGAINST."

### A.    The Patent Drawings.

The patent drawing (Figure 5) forming the entire basis of the defendants' argument in this case is not drawn on the claims asserted by the plaintiffs. Important structural differences between that single embodiment and other embodiments illustrated in the specification, however, are instructive in demonstrating why it is that the defendants' desire for a temporal limitation of the pitch adjustment rod is not a limitation on the patented invention.

Figure 5—the drawing repeatedly emphasized by the defendants and focused upon by this Court at argument—depicts the spring means (23) (in the embodiment depicted, the "spring means" is the "molded high density polyurethane" claimed in Claim 2 of the patent) in close proximity to the lateral arm of the awning (12)—away from the adjustment rod and the horizontal pivot barrel. This location is in accordance with that claimed in Claim 1, i.e. "said spring means comprises a polymeric compression member, said distal end of said lateral arm comprises a generally hollow housing, and within said housing is closely disposed said polymeric compression member." (Claim 1(d)). The asserted claims of the patent (Claims 6 and 7), however, do not claim that the spring means must be located at any particular point on the assembly, such as that location depicted on Figure 5. Rather, the sole requirement in the asserted claims is that the spring means be "operatively connected between the bracket mounting means and the arm mounting means to normally maintain [the] lateral arm in an equilibrium position." (Claim 6, element (c)).

In contrast to Figure 5, Figures 1-3 of the patent depict a configuration of the spring means that is entirely different from the arrangement in Figure 5.[6] These figures show the spring means of the embodiment (labeled 13a, 13b) operatively connected at the very end of the arm mounting means, identified as "proximal end" 12a. (Col. 2, l. 41). This configuration is identical to the configuration of the accused device, with the arm pivoting

---

[6] According to the specification, these three figures "are schematic side elevational views of an awning support system including one type of lateral arm bracket according to the present invention." (Col. 2, ll. 11-13).

about pivot mounting points 10a,[7] and, indeed, depicts over the series of the figures the very "see-saw fashion" of lever that the defendants erroneously contend renders the accused device substantially different from the patented invention. (See, e.g., Defs.' Nov. 2 Brief at 10). Obviously in the configuration depicted in Figures 1-3, when examined in light of the language of Claim 6, an adjustment rod threadingly engaging a "horizontal pivot barrel disposed through the distal end of [the] housing" (Claim 6(d)) would be pulled up (along with (a) the pivot barrel, (b) the housing in which the pivot barrel is "disposed" and (c) the end of the awning arm, which comprises the housing) in order to allow the awning to pivot and shed a vertical load and then be pushed down when the load was shed. This is precisely the alleged operation of the accused device.[8]

For pitch adjustment, however, which the defendants discuss at no point in their filings, such adjustment rod would have to be held against moving vertically "so as to selectively raise or lower [the] horizontal pivot barrel to adjust the equilibrium position of [the] lateral arm." (Claim 6(e)). As the defendants' have admitted, this, too, is precisely the operation of the accused device. Thus, in discussing the accused device at his deposition, Mr. Toffey testified as follows:

---

[7] As depicted in the material filed in support of the defendants' initial claims construction brief, the "support arm housing 72 is pivoted, see-saw fashion about the fulcrum bolt 70." Aff. of H. Toffey, Defs.' Local Rule 56(a)1 Statement (doc. 74), Exhibit B; see also accompanying photograph of accused device (attached as Exhibit G-1 to affidavit). "Fulcrum bolt 70" in the accused device equates to the pivot mounting points labeled as parts 10a in Figures 1-3 of the '095 Patent.

[8] The defendants explain this load-shedding operation of the accused device in the Affidavit of Harold Toffey filed in support of the defendants' initial claims construction filing. The affidavit is attached as Exhibit B to the defendants' Local Rule 56(a)1 Statement (doc. 74).

14

> Q.    .... Why is it that the pivot barrel rides up and down on the adjustment rod?
>
> A.    Because in a momentary position this bolt [the adjustment rod in the accused device] is <u>held secure</u> by the strength of the spring and what's called a jam nut which is on top of this plate.

Dep. of H. Toffey, excerpts attached as Exhibit A, at 108 (emphasis added). This is the precise meaning of the words "secured against vertical movement" in Claim 6 of the '095 Patent advocated by the plaintiffs, and these admissions constitute significant extrinsic evidence that one skilled in the art would not import any temporal limitation to the word "secured."[9] Mr. Toffey further explained the operation of the adjustment rod in the accused device [the "bolt" referenced is the adjustment rod in the accused device]:

> Q.    While you're adjusting the pitch your adjustment rod doesn't move up and down, right?
>
> A.    While you are adjusting the pitch typically no.
>
> Q.    And that's because we talked about how the pivot barrel rides the bolt up and down, correct --
>
> A.    Correct.
>
> Q.    -- the bolt stays fixed, correct?
>
> A.    Correct.

<u>Id.</u>, at 124. In the face of these admissions, it is incredible for defendants' counsel to maintain that the word "secured" carries with its ordinary meaning or in the art any implied notion of permanency.[10]

---

[9] Mr. Toffey has been involved in the manufacture of awnings since at least 1986. (<u>See</u> Deposition of H. Toffey, excerpts attached as Exhibit A, at 22-23).

[10] <u>See also</u> Pls.' Reply Brief (doc. 77) at 6 n.2, detailing additional extrinsic evidence that, to one skilled in the art, an object may be held in "fixed" position at one point in time and, yet, movable at another point in time.

### B.    The Written Description.

Notwithstanding the defendants' singular reliance on Figure 5 of the '095 Patent, the written description of the invention itself does not limit the subject matter of the patent to a permanently secured adjustment rod. Rather, the only portion of the written description to discuss the adjustment rod in any detail provides:

> A threaded vertical pitch adjustment rod 26 extends through a channel 28 defined in the proximal end of housing 22 and threadingly engages pivot barrel 25. The vertical position of pivot barrel on adjusting rod 26 is set by rotating the adjusting rod by means of a nut 27 fixed to the lower end thereof and bearing against a plate 24 which extends between recesses defined in the lower edges of the shoulder brackets 21a and 21b. As pivot barrel 25 is raised on adjusting rod 26, lateral arm 12 will pivot downwardly about bolt 29. Likewise, lowering barrel 25 on adjusting rod 26 upwardly pivots lateral arm 12 about bolt 29. Such adjustment sets the equilibrium position of lateral arm 12.

('095 Patent, Col. 3, ll. 42-54).

The discussion in the specification of the adjustment rod dictates that the words "secured against" in Claim 6(e) have a broader meaning than the depiction in the preferred embodiment (Figure 5).[11] Specifically, in discussing the embodiment depicted in Figure 5, the specification notes only that the "nut" that is "fixed to the lower end" of the adjusting rod "bear[s] against a plate 24 which extends between recesses defined in the lower edges of the shoulder brackets." (Col. 3, ll. 47-49) (emphasis added). The use of the phrase "bearing against" informs the current dispute between the parties with regard to whether the adjustment rod must be at all times permanently "'fixed' against vertical movement relative to the bracket mounting." (Doc. 87 at 1). There is no notion of permanency suggested in, or inherent to, the concept of a "nut ... bearing against a plate."

---

[11] The defendants nowhere address the language employed in the written description; their analysis is focused solely and exclusively on counsel's conclusions about the drawing.

In contrast, where the patentee wanted to convey the notion of a permanent attachment among the components of an embodiment, he clearly knew how to do so. For example, the specification's discussion of another drawing—Figure 8 of the '095 Patent (which relates to a different "vertical rod" in that embodiment)—reveals distinctly and clearly that that vertical rod is "fixedly mounted." (Col. 4, l. 43). The discussion of that same embodiment speaks of yet another component (horizontal bar 68) being "[f]ixedly attached to [the] shoulder brackets." (Col. 4, l. 44). There is a notable absence from the written description of any such language in connection with the adjustment rod.

### C.    The Claim Language.

The '095 Patent contains no temporal limitation on the secured state of the pitch adjustment rod. The relevant claim element, element 6(e), reads:

> a threaded vertical pitch adjustment rod secured against vertical movement with respect to said bracket mounting means, said pitch adjustment rod threadingly engaging said horizontal pivot barrel so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm.

As drafted, the claim language specifies that the rod must be "secured against vertical movement." But the claim does not stop there; it goes on to elaborate exactly how and to what extent the adjustment rod is to be "secured":

(1)    "with respect to [the] bracket mounting means"; and by

(2)    threadingly engaging said horizontal pivot barrel so as to selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said lateral arm

The Court need not look beyond the ordinary meaning of the words employed in the claim and the context of the claim element in order to determine the meaning of the disputed

claim term "secured against." See Phillips, 415 F.3d at 1314. In other words, the claim itself

dictates exactly in what regard and to what extent the adjustment rod is to be "secured,"

namely, by being kept from moving vertically in relation to the bracket assembly and by

"threadingly engaging [the] horizontal pivot barrel so as to selectively raise or lower said

horizontal pivot barrel to adjust the equilibrium position of the [the] lateral arm." (emphasis

added).

The defendants' proffered claim interpretation and this Court's tentative construction

essentially reads out of element 6(e) substantial limitations on the claim. Specifically, under

this construction the claim limitations that inform just how the adjustment rod is to be "secured

against vertical movement" (i.e. "with respect to said bracket mounting means" and "so as to

selectively raise or lower said horizontal pivot barrel to adjust the equilibrium position of said

lateral arm") become essentially meaningless. The defendants do not attempt to account for

this result other than to cast this language as "gratuitous[]." See Defs.' Nov. 22 Brief at p.7.

But the defendants are wrong in their claim interpretation because this language has definite

meaning that cannot simply be ignored.

The Federal Circuit has held that "functional language is, of course, an additional

limitation in the claim." K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1363 (1999); see also In

re Echerd, 471 F.2d 632, 635 (C.C.P.A. 1973) ("There is nothing intrinsically wrong in

defining something by what it does rather than by what it is.... [T]hese potentially

distinguishing features simply be ignored."); cf. Perkin-Elmer Corp. v. Westinghouse Elec.

Corp., 822 F.2d 1528, 1533 n.8 (Fed. Cir. 1987) ("[S]pecific claim limitations can[not] be

ignored as insignificant or immaterial in determining infringement."). In Laitram Corp. v.

18

Intralox, Inc., 863 F.2d 855, 858 (Fed. Cir. 1988), the Federal Circuit held that so called "definitional parameters" used within a claim inform the meaning of the claim language. There, the court held that the claim limitation "slightly greater" was informed by the "definitional parameter" "so that." The court specifically held that "[t]he phrase 'slightly greater' is not presented in a vacuum. The claim contains definitional parameters: 'so that said module is end-to-end reversible, so that a plurality of said modules may be engaged ....'" Id. In this case, the phrase "secured against" is not used in a vacuum; the definitional parameter "so as to" similarly informs the meaning of the disputed claim language. Indeed, it provides the reader with an exact understanding, from the claim terms alone, to what extent the adjustment rod must be secured.

Moreover, the plain language of the claim recites a relative secured state rather than an absolute secured state. In this regard, the defendants' proposed construction and the Court's tentative construction ignores the phrase "with respect to [the] bracket mounting means" following "secured against vertical movement." The claim language "with respect to" recites a relative state rather than an absolute state. See Neomagic Corp. v. Trident Microsystems, Inc., 287 F.3d 1062, 1075 (Fed. Cir. 2002) ("[I]f the inventors had meant to claim an absolute negative voltage, they need not have used the words 'with respect to'; 'negative' would have sufficed."). In this case, there would be no need for the words "with respect to [the] bracket mounting means" if the patentee intended the adjustment rod to be permanently fixed against vertical movement.

### D.    Defendants Point to No Evidence Contradicting Plaintiffs' Interpretation.

In support of their construction argument, the defendants point only to the fact that one dictionary lists "fixed" as a "synonym" for the word "secure" (see Defs.' Nov. 22 Brief at 6). From this, the defendants casually assert both that "fixed" is "an ordinary meaning frequently used in patent specifications" and that "fixed" is the "'ordinary' meaning of 'secured' in describing mechanical structures." (Id.). The defendants offer absolutely no evidence to support these assertions; nor do the defendants even attempt to square them with the presence of the preposition "against" immediately following the word "secured" in the patent claim. See ACTV v. Walt Disney Co., 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms."). In short, the defendants do not in any constructive way attempt to explain how their proffered meaning of the claim terms fits within the context of the patent claims or finds support in either the specification, the prosecution history of the patent or though any extrinsic evidence. Significantly, other than their reference to their interpretation of Figure 5, the defendants point to nothing that mandates the narrowing of the language used in Claim 6.

### V.    THE COURT'S TENTATIVE CONSTRUCTION READS A TEMPORAL LIMITATION INTO THE ASSERTED CLAIMS.

Neither claim 6 nor claim 7 contain a limitation that the pitch adjustment rod is permanently secured against vertical movement. The written description of the invention, too, is silent as to any such temporal limitation. No other intrinsic evidence has been offered to

support this limitation save the single drawing of a preferred embodiment, which, as discussed above, does not even support the defendants' proposed construction.

"[N]ormal rules of usage create a 'heavy presumption' that claim terms carry their accustomed meaning in the relevant community at the relevant time." Home Diagnostics, Inc. v. LifeScan, Inc., 381 F.3d 1352, 1355 (Fed. Cir. 2004). There is no contention that the word secured, when used with the preposition "against," has any specialized meaning in the art and, more importantly, there has been no evidence offered by the defendants that the word has any such specialized meaning. Thus, standard dictionaries remain a proper source for the ordinary meaning of this claim language. See Old Town Canoe Co. v. Confluence Holdings Corp., 448 F.3d 1309, 1316 (Fed. Cir. 2006); Gemstar-TV Guide Int'l , Inc. v. ITC, 383 F.3d 1352, 1366 (Fed. Cir. 2004). No dictionary definition before this Court carries with the word "secured" any inherent notion of the permanency urged by defendants and, indeed, the only evidence offered by either party concerning the phrase "secured against" supports the plaintiffs' interpretation of an absence of a temporal limitation.[12]

As the Court noted at argument, even substituting the defendants' choice of dictionary

---

[12] As noted at the argument of this matter, the patent to Wessels, et al., (U.S. Patent No. 4,214,621, at col. 3, l. 60) clearly uses the disputed phrase "secured against" in a manner wholly consistent with the plaintiffs' interpretation of the claim language here. The Court appeared to draw an adverse inference from the absence of similar clarity in the '095 Patent, but such an inference is not warranted. Wessels is cited for the simple proposition that, to those skilled in the art, the phrase "secured against" does not carry with it any inherent temporal limitation. See Arthur A. Collins, Inc. v. N. Telecom, Ltd., 216 F.3d 1042, 1045 (Fed. Cir. 2000) ("When prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning.").

definition—"fixed"—for the claim language "secured" does not end the inquiry. Transcript of July 19, 2006 Hearing at 37 ("If you leave it at 'fixed,' that doesn't necessarily do the job because 'fixed' could be temporary or it could be permanent."). The defendants' interpretation, and the Court's tentative construction, therefore inherently fall short of resolving the parties' dispute. See Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1349 (Fed. Cir. 2005) ("in those circumstances where reference to dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition"). In contrast, the plaintiffs' proposed interpretation reads the disputed claim language in the context of the entire claim, reads the disputed claims to give effect to all limitations, and is supported by the specification and the accompanying drawings.

The patent specifies no limitation on the state of the adjustment rod in any state other than at pitch adjustment: whether it moves, whether it is removable and inserted only for pitch adjustment, or whether it is permanently interconnected to the bracket mounting means simply is not part of the invention claimed. The Court will not find a temporal limitation in the specification precisely because such a limitation is not a part of the invention.

The defendants attempt to limit the full effect of the meaning attributed to the word "secured" in this case by importing a temporal limitation to that word. In other words, the defendants (and this Court's tentative construction) read a limitation of permanence into the claim language that is not supported by the claim language itself, the specification of the patent, any other intrinsic evidence, or, indeed, any extrinsic evidence. This is contrary to clear principles of claims construction. See Hewlett-Packard Co. v. Mustek Sys., 340 F.3d 1314, 1324 (Fed. Cir. 2003) (court "cannot construe the claim to add a limitation not present

in the claim itself"). In this case, had the patentee intended to limit the disputed claim term to encompass only a permanently secured adjustment rod, he could have easily done so by explicitly modifying the disputed claim language with the term "permanently." See SuperGuide Corp. v. DirecTV Enterprises, Inc., 358 F.3d 870, 880 (Fed Cir. 2004).

## VI.   CONCLUSION.

For the reasons stated above, and for the additional reasons set out in the plaintiffs' Opening Brief (doc. 69), Reply Brief (doc. 77) and Notice of Subsequent Authority (doc. 79), the plaintiffs' urge the Court to reject the additional temporal limitation advocated by the defendants and to construe the claim terms in accordance with the plaintiffs' proposed construction.

PLAINTIFFS,
EASTERN AWNING SYSTEMS, INC., and
STEPHEN LUKOS,

By____/s/Patrick M. Fahey_____
        Charles L. Howard (ct05366)
        Patrick M. Fahey (ct13862)
        Lee A. Duval (ct23387)
        For Shipman & Goodwin LLP
        One Constitution Plaza
        Hartford, CT 06103
        Telephone: (860) 251-5000
        Facsimile: (860) 251-5219
        E-mail: pfahey@goodwin.com
        Their Attorneys

## CERTIFICATION OF SERVICE

I hereby certify that on this 7th day of August, 2006, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/Patrick M. Fahey
Patrick M. Fahey

442979 v.01